### YOUNGCLAUS v. OMAHA FILM BOARD OF TRADE et al.
### No. 364.

District Court, D. Nebraska, Lincoln Division.
July 2, 1932.

Kirkpatrick, Good & Dougherty, of York, Neb., and Moyer & Moyer, of Madison, Neb., for plaintiff.

Arthur F. Mullen, Sr., and Arthur F. Mullen, Jr., both of Omaha, Neb., and Bruce Bromley and George Shea, both of New York City, for defendants.

MUNGER, District Judge.

In this suit the plaintiff seeks to enjoin the defendant from enforcing a plan of operation, which he alleges is in violation of the anti-trust laws of the United States. The plaintiff is engaged in business as an exhibitor of moving pictures in Madison, Neb. At Norfolk, Neb., less than fifteen miles away, is a rival moving picture exhibitor. Norfolk is a city having a population of over 9,000 and less than 12,500. The defendant distributors and others entered into an agreement among themselves not to license the use of a picture by the plaintiff for a period of time (not exceeding ten days) after the picture had been displayed by the rival theater at Norfolk.

It has been the custom of distributors of moving pictures to place in contracts licensing the use of such pictures by exhibitors a provision that the licensee is to have the right to exhibit the picture a certain number of days before it may be exhibited in other theaters in the same territory, although such other theaters may have licenses to exhibit the same picture, and to place in the license contracts of such other theaters a provision that the picture must not be exhibited until the end of this so-called protection period.

The agreement of which the plaintiff complains is as follows:

"Uniform Zoning and Protection Plan for the Omaha Distribution Territory.

"July 22, 1930

"The following Zoning and Protection Plan is the result of careful study of the protection and run situations in the City of Omaha and the Omaha Distribution Territory by General Committee representing all interests and established for the purpose of working out a uniform plan for runs and protection that would be fair and reasonable to all concerned.

"The General Committee and Sub-committees held a series of meetings from June 23 to July 22, 1930, at Omaha, Nebraska, considering complaints and suggestions that have been made or filed concerning runs and protection.

"A continuing zoning committee was appointed by the General Committee for the season of 1930–31 as follows:

"R. S. Ballantyne     R. W. Thayer
"S. W. Fitch          Harry Goldberg
"Phil Monsky          E. R. Cummings
"W. H. Creal          W. A. Bowker
"Sam Epstein          H. B. Day
"C. A. Brown          C. E. Williams
     "Regina Molseed, Secretary to Committee.

"The above committee will meet as the occasion requires hereafter as determined by the Committee, to hear any complaints of any Exhibitor or Distributor in the territory with reference to this Zoning and Protection Plan, and to determine what is proper and fair zoning or classification of any theatre not covered herein or that may be constructed during such season. A circular letter is being sent to all exhibitors in the territory advising them of the existence of the Continuing Zoning Committee and any requests or complaints for the attention of the Committee should be addressed to Regina Molseed, Secretary to the Continuing Zoning Committee, Omaha Film Board of Trade, Medical Arts Building, Omaha, Nebraska.

"Protection and run clauses in all contracts should be complete, explicit and impossible to misinterpret. Verbal protection is unenforcible. By having the runs in the territory uniform and clearly defined, costly and disagreeable blunders and mistakes in booking may be avoided and eliminated. By restricting protection within reasonable limits enterprising exhibitors can book attractions at earlier dates when they will produce greater revenue at their theaters. We ask that you do your part in carrying out the Zoning Plan as agreed upon in spirit as well

as in contract, thereby making the plan and its provisions a part of your contract by reference.

"First run theatres may specify protection over suburban theatres by naming the theatres and number of days' protection in their contracts, provided the theatre and number of days are within the maximum defined in the Zoning Plan. Subsequent runs may define the prior run theatres they will or will not follow in their contracts. Adjacent suburbs and towns within ten miles of the city limits are considered as part of the same city in determining first run theatre protection over the city theatres in such town or city.

"Classification of admission to be arrived at by night prices. In theatres charging various admissions, classification to be determined by admission on the particular picture as to the admission charged, e. g., if a theatre charges 30c admission on Sunday, Monday and Tuesday they would be entitled to protection period set aside for 30c run. If admission of 25c is charged on other days of the week protection provided for this classification must prevail on the run of the picture.

"All plans or devices to avoid a true admission classification or run for any theatre, such plan or device for the evasion of a true admission price classification or run may cause the reclassification of such theatre by Zoning Committee, who in their discretion may classify the theatre in accordance with the actual admission value of such theatre.

"Runs and Protection

"Paramount, World and Orpheum, Omaha, maximum protection in the City of Omaha after the last day of exhibition over all subsequent run as follows:

| 38 days over theatres charging admission of 35c |
| 42 " " " " " " 30c |
| 56 " " " " " " 25c |
| 77 " " " " " " 20c |
| 98 " " " " " " 15c |
| 120 " " " " " " 10c |

"State, Omaha, maximum protection after the last day of exhibition over all subsequent runs as follows:

| 28 days over theatres charging admission of 35c |
| 35 " " " " " " 30c |
| 42 " " " " " " 25c |
| 63 " " " " " " 20c |
| 84 " " " " " " 15c |
| 106 " " " " " " 10c |

"Paramount, World and Orpheum, Omaha, maximum protection after the last day of exhibition, thirty (30) days over Strand, Broadway and Liberty, Council Bluffs. Seven (7) days additional for each five (5c) cents less charged in admission.

"State, Omaha, maximum protection after the last day of exhibition, twenty-eight (28) days over Strand, Broadway and Liberty, Council Bluffs. Seven (7) days additional for each five cents (5c) less charged in admission.

"Strand and Broadway, Council Bluffs, maximum protection after the last day of exhibition, fourteen (14) days over the Liberty, charging an admission of 30c and seven (7) days additional for each five cents (5c) less in admission.

"Paramount, World and Orpheum, Omaha, maximum protection after the last day of exhibition as follows:

"28 days over theatres located within a radius of from 1 to 25 miles of Omaha.

"7 days over theatres located within a radius of from 25 to 35 miles of Omaha.

"Council Bluffs, maximum protection after the last day of exhibition as follows:

"7 days over theatres located in Iowa within 35 mile radius of Omaha.

"Sioux City, Iowa.

"Capital and Orpheum, Sioux City, Ia., maximum protection after the last day of exhibition as follows:

| 38 days over theatres charging admission of 35c |
| 42 " " " " " " 30c |
| 56 " " " " " " 25c |
| 77 " " " " " " 20c |
| 98 " " " " " " 15c |
| 120 " " " " " " 10c |

"Iowa and Princess, Sioux City, Ia., maximum protection after the last day of exhibition as follows:

| 28 days over theatres charging admission of 35c |
| 35 " " " " " " 30c |
| 42 " " " " " " 25c |
| 63 " " " " " " 20c |
| 84 " " " " " " 15c |
| 106 " " " " " " 10c |

"First run theatres, Sioux City, Iowa, maximum protection after the last day of exhibition as follows:

"21 days over all theatres located within a radius of from 1 to 25 miles of Sioux City.

"Stuart, Orpheum and Lincoln, Lincoln, Nebraska, maximum protection after the last day of exhibition as follows:

| 38 days over theatres charging admission of 35c |
| 42 " " " " " " 30c |
| 56 " " " " " " 25c |
| 77 " " " " " " 20c |
| 98 " " " " " " 15c |
| 120 " " " " " " 10c |

"Colonial and Rialto, Lincoln, Nebraska, maximum protection after the last day of exhibition as follows:

| 28 days over theatres charging admission of 35c |
| 35 " " " " " " 30c |
| 42 " " " " " " 25c |
| 63 " " " " " " 20c |
| 84 " " " " " " 15c |
| 106 " " " " " " 10c |

"First Run Theatre, Lincoln, Nebraska, maximum protection after the last day of exhibition as follows:

"14 days over all theatres located within a radius of from 1 to 20 miles of Lincoln.

"Out-State Protection between Towns.

"Towns of 20,000 to 15,000 population to have 14 days protection within a radius of 15 miles.

"Towns of less than 15,000 to 12,500 population to have 12 days protection over a radius of 15 miles.

"Towns of less than 12,500 to 9,000 population to have protection of 10 days over a radius of 15 miles.

"Towns of less than 9,000 to 5,000 population to have protection of 10 days over a radius of 10 miles.

"Towns of less than 5,000 population shall not have protection to exceed 7 days over a radius of 10 miles.

"This same provision was intended to apply and has always applied in favor of out-state exhibitors as well as city exhibitors.

"(2) The Plan limits normally subsequent run theatres contracting for a prior run only so far as it limits the amount of protection that may be accorded.

"(3) Any exhibitor whose protection is provided for under the Plan may agree with the distributor for a less amount of protection than is provided in the Plan."

The defendants contend that this plan was a mere statement of the maximum protection period which could be granted to the Norfolk theater. Obviously the plan is mandatory upon the distributors to grant some period of protection. The course of dealing under it shows that it was intended that the distributors should grant whatever period (not exceeding ten days) which the Norfolk theater should request. Whatever the length of the period, whether for one day or more, the distributors limited their freedom to contract according to their individual judgments, as to the period of protection to be accorded to the Norfolk theater and to be imposed upon the plaintiff. This agreement has been enforced against the plaintiff.

Whatever may be the right of the distributors separately and individually to license the exhibition of pictures by contracts giving to the licensees the exclusive right of exhibition for a period of time, a combination of distributors, such as exists here, controlling a large part of the trade in interstate commerce, to refrain from competition among themselves in making such licensing agreements with exhibitors, by agreeing that they will each grant a substantial period of protection to one exhibitor over a rival distributor in competitive territory, is an unreasonable restraint of interstate trade, and is condemned by the anti-trust laws of the United States.

The plaintiff is entitled to the right to bargain with distributors who are free from a combination among themselves not to bargain with the plaintiff unless he shall consent that his rival shall have had the first opportunity to exhibit a picture.

The recent cases of Paramount Famous Lasky Corp. v. United States, 282 U. S. 30, 51 S. Ct. 42, 45, 75 L. Ed. 145, and United States v. First National Pictures, Inc., 282 U. S. 44, 51 S. Ct. 45, 75 L. Ed. 151, state the principles which are applicable in this case.

An argument has been made in this case of the need of protection for the exhibitor who purchases the right to display a picture but the same contention in principle was presented to the court in the Paramount Famous Lasky Corporation Case, wherein the right was asserted to contract for arbitration as a method of settling disputes, and the court said:

"The Sherman Anti-Trust Act (15 USCA §§ 1–7, 15) seeks to protect the public against evils commonly incident to the unreasonable destruction of competition, and no length of discussion or experimentation amongst parties to a combination which produces the inhibited result can give validity to their action. Congress has so legislated 'as to prevent resort to practices which unduly restrain competition or unduly obstruct the free flow of such commerce, and private choice of means must yield to the national authority thus exerted.' Eastern States Lumber Ass'n. v. United States, supra, page 613 of 234 U. S., 34 S. Ct. 951, 954 [58 L. Ed. 1490, L. R. A. 1915A, 788].

"It may be that arbitration is well adapted to the needs of the motion picture industry; but, when under the guise of arbitration parties enter into unusual arrangements

which unreasonably suppress normal competition, their action becomes illegal.

"In order to establish violation of the Sherman Anti-Trust Act, it is not necessary to show that the challenged arrangement suppresses all competition between the parties or that the parties themselves are discontented with the arrangement. The interest of the public in the preservation of competition is the primary consideration. The prohibitions of the statute cannot 'be evaded by good motives. The law is its own measure of right and wrong, of what it permits, or forbids, and the judgment of the courts cannot be set up against it in a supposed accommodation of its policy with the good intention of parties, and, it may be, of some good results.' Standard Sanitary Mfg. Co. v. United States, 226 U. S. 20, 49, 133 S. Ct. 9, 15, 57 L. Ed. 107."

A decree is entered accordingly.